**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**ANTHONY BOUKNIGHT,**                 )
                                                    )
                    **Plaintiff,**                 )
                                                    )
**v.**                                             )          **Civil Action No.: 1:13-cv-2064 (RDM)**
                                                    )
**DISTRICT OF COLUMBIA,**               )
                                                    )
                    **Defendant.**                 )
_____)

## MEMORANDUM AND ORDER

In this civil action, Plaintiff Anthony Bouknight alleges that his former employer, the

District of Columbia Fire and Emergency Medical Services Department, discriminated against

him on the basis of race, unlawfully retaliated against him, and created a hostile work

environment.  Dkt. 1 ¶¶ 1-2.  Before the Court is Defendant's Motion to Partially Dismiss

Plaintiff's Complaint.  Dkt. 7.  For the reasons discussed below, the motion is **GRANTED** in

part and **DENIED** in part.

## I.  BACKGROUND

Plaintiff filed his complaint on December 30, 2013.  Dkt. 1.  The complaint contains five

counts, including claims for employment discrimination on the basis of race, retaliation, hostile

work environment, violation of 42 U.S.C. § 1983, and equitable relief.  *Id.*  According to the

complaint, Plaintiff has been an employee of the District of Columbia Fire and Emergency

Services Department ("DCFESD") since 1991, where he has worked as a paramedic.  *Id.*  ¶¶ 12-

13.  He currently holds the rank of Captain.  *Id.* ¶ 12.  The complaint alleges that in 2007

Plaintiff was called to make an emergency pick-up of a patient.  *Id.* ¶ 14.  Plaintiff rode in the

1

back of the ambulance, while another paramedic drove the vehicle.  Because the driver became

lost during the trip, they were delayed in reaching the patient.  Although Plaintiff was not driving

the ambulance, as the senior paramedic on the call, he was faulted for the delay and suspended

for 10 days.  *Id.* ¶¶ 15, 18.  Plaintiff, who is African American, alleges that a white paramedic

was not disciplined under similar circumstances, *id.* ¶ 19, and that the DCFESD "has a custom

and practice of disciplining African American employees more often and more severely than

White employees for the same, similar or less egregious incidents," *id.* ¶ 20.  He alleges that he

was treated less favorably because of his race and that he was subjected to retaliation for raising

separate allegations of racial discrimination on a prior occasion.  *Id.* ¶¶ 24-149.

On May 1, 2014, Defendant filed a Motion to Partially Dismiss Plaintiff's Complaint,

seeking dismissal of Plaintiff's Section 1983 and Section 1981 claims.  Dkt. 7.  With respect to

the Section 1983 claims, the motion argues that the availability of a Title VII action precludes

Plaintiff from bringing suit under Section 1983.  *Id.*  As to the Section 1981 claims, Defendant

contends that those claims should be dismissed because Section 1981 does not create a private

cause of action against state or municipal entities.  *Id.*  Although, as Defendant notes, the

complaint does not contain a separate count invoking Section 1981, it does allege in a prefatory

paragraph that the action is brought pursuant to a number of civil rights statutes, including

Section 1981.  Dkt. 1 ¶ 1.

Plaintiff opposes the motion, arguing that the Court of Appeals for the D.C. Circuit has

held that Title VII does not preclude state employees from bringing suit for workplace

discrimination under other statutes, and that the Civil Rights Act of 1981 does create a private

right action against state actors.  Dkt. 10.  In response, Defendant filed a "Praecipe,"

withdrawing Defendant's motion to dismiss Plaintiff's Section 1983 claims, and briefly

reiterating its argument that the Section 1981 claims should be dismissed.  Dkt. 12.  Accordingly, at this juncture, the sole issue before the Court is whether Plaintiff's Section 1981 claim should be dismissed.  *See id.*

## II.  DISCUSSION

Defendant's partial motion to dismiss raises a pure question of law and is thus properly resolved on the pleadings.  *See Pitt v. District of Columbia*, 491 F.3d 494, 509 (D.C. Cir. 2007). That question is whether Section 1981 creates a private right of action against municipal defendants.  Although addressing a previous version of Section 1981, the Supreme Court has resolved precisely that question, and has held that it does not.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989).  The intervening amendments to Section 1981, moreover, do not change that result.  The Court, accordingly, holds that Section 1981 does not create a private cause of action against municipal defendants like the DCFESD  and that Plaintiff's Section 1981 claims must be dismissed.

The Supreme Court has long construed Section 1981 to create a private cause of action for violations by private defendants.  *See, e.g.*, *Johnson v. Ry. Exp. Agency, Inc.,* 421 U.S. 454, 459-60 (1975) ("[Section] 1981 affords a federal remedy against discrimination in private employment on the basis of race.").  In 1989, the Supreme Court decided two cases involving the meaning of Section 1981.  In the first, *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), the Court declined to overrule its decision in *Runyon v. McCrary*, 427 U.S. 160 (1976), which held that Section 1981 prohibits discrimination in private—as well as public—contracting.  At the same time, however, *Patterson* narrowly construed the substantive scope of Section 1981, concluding that it reached only discrimination in the making and enforcement of contracts, and

not discrimination that otherwise occurred during the course of an employment relationship.  491 U.S. at 176-77.

The second case, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989), is more directly at issue here.  In that case, the Supreme Court addressed whether the version of Section 1981 then in effect created a private cause of action against local governmental entities.  In concluding that it did not, the Court explained that, "in the context of the application of § 1981 . . . to private actors," it had previously implied a cause of action because "'there existed no other remedy to address such violations of the statute.'"  *Id.* at 731-32 (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 728 (1979) (White, J., dissenting)).  With respect to the application of Section 1981 to public actors, however, the Court concluded that Section 1983 already provided a remedy "against state actors [in cases] alleging violation of the rights declared in § 1981."  *Jett*, 491 U.S. at 731.  As the Supreme Court observed, "it has long been the law that" the power to imply a cause of action "should not be exercised in the face of an express decision by Congress concerning the scope of remedies available under a particular statute."  *Id.* at 732.  Where a local governmental entity violates Section 1981, the victim is not without a remedy.  That remedy, however, is the "express 'action at law' provided by § 1983," which, among other things, encompasses the "custom or policy" requirement within the meaning of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  *Jett*, 491 U.S. at 735-36.

Plaintiff does not dispute that the version of Section 1981 in effect when the Supreme Court decided *Jett* did not include a private cause of action against municipal actors under Section 1981.  He argues, however, that the Civil Rights Act of 1991 created a private cause of action against state and local governmental actors under Section 1981.  Dkt. 10 at 6-7.  That statute was enacted, at least in part, in response to several Supreme Court civil rights decisions

from the same Term that *Patterson v. McCrary* and *Jett* were decided.  Congress, for example,

expressly overturned the Supreme Court's decisions in *Wards Cove Packing Co. v. Atonio*, 490

U.S. 642 (1989) and *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), *see* H.R. Rep. No. 102-

40, at 2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 695, both of which construed provisions of

Title VII of the Civil Rights Act of 1964.

With respect to Section 1981, Congress added two paragraphs.  Prior to the 1991

legislation, Section 1981 read as follows:

> All persons within the jurisdiction of the United States shall have the same right
> in every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be
> subject to like punishment, pains, penalties, taxes, licenses, and exactions of every
> kind, and to no other.

42 U.S.C. § 1981 (1976).  The first additional paragraph expressly overturns the Supreme

Court's decision in *Patterson*, and provided that the phrase "make and enforce contracts," should

be construed to include "the making, performance, modification, and termination of contracts,

and the enjoyment of all benefits, privileges, terms, and conditions of the contractual

relationship."  42 U.S.C. § 1981(b).  As a result, Section 1981 now reaches claims relating to an

ongoing employment relationship.  The second addition to Section 1981 provides:  "The rights

protected by [Section 1981] are protected against impairment by nongovernmental

discrimination and impairment under color of State law."  42 U.S.C. § 1981(c).  According to

Plaintiff, this new paragraph—subsection (c)—created an implied cause of action against state

and local governmental actors under Section 1981.  The Court disagrees.

"The guiding principle" for determining whether a statute includes an implied right of

action "is legislative intent."  *El Paso Natural Gas Co. v. United States*, 750 F.3d 863, 889 (D.C.

Cir. 2014).  The key question is whether the statute "displays an intent to create not just a private

right but also a private remedy.  Statutory intent on this latter point is determinative." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  The Supreme Court has made clear, moreover, that where a statute does not expressly create a private remedy, courts should be reluctant to read such remedies into the statute by implication.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002) ("[I]f Congress wishes to create new rights . . . it must do so in clear and unambiguous terms . . . ."); *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1078 (D.C. Cir. 2012) (noting that "the Supreme Court has 'sworn off' implied rights of action") (quoting *Sandoval*, 532 U.S. at 287).  Here, moreover, the hurdle is particularly high, since the Supreme Court concluded in *Jett*—just two years before the Civil Rights Act of 1991 was enacted—that Section 1981 did not contain an *implied* private cause of action against municipal actors.  Had Congress intended to overturn *Jett* and to create a private cause of action against government actors, one might reasonably presume that—at that point—it would have done so *expressly*.

To date, the Courts of Appeals for seven circuits have addressed the question of whether subsection (c) abrogated *Jett* and created a private cause of action against state actors.  Six have held that it did not.  *See McGovern v. City of Philadelphia*, 554 F.3d 114, 120 (3d Cir. 2009) ("[W]e would expect much more than complete silence if Congress intended to set aside such a notable ruling."); *Arendale v. City of Memphis*, 519 F.3d 587, 598 (6th Cir. 2008) (holding that the legislative history of Section 1981(c) indicates that it was intended to codify *Runyon v. McCrary* and not to overrule *Jett*); *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006) ("Congress does not overrule recent Supreme Court precedent so subtly."); *Oden v. Oktibbeha County*, 246 F.3d 458, 463 (5th Cir. 2001) ("We are persuaded that the conclusion in *Jett* remains the same after Congress enacted the 1991 amendments."); *Butts v. County of*

*Volusia*, 222 F.3d 891, 894 (11th Cir. 2000) (holding same); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir. 1995) (holding same).

The Ninth Circuit Court of Appeals is the one court of appeals to have reached the opposite conclusion.  In *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1213 (9th Cir. 1996), it held that "[t]he lack of legislative history announcing an express intent to overrule *Jett* . . . does not preclude an implied cause of action against state actors under 42 U.S.C. § 1981."  Applying the multi-factor balancing test from *Cort v. Ash*, 422 U.S. 66 (1975), the Ninth Circuit went on to conclude that language added by the 1991 legislation "creates federal civil rights in favor of a class of person that includes" the plaintiff, *see Fed'n of Af. Am. Contractors*, 96 F.3d at 1211, demonstrates that Congress intended to treat private and governmental entities the same under Section 1981, *id.* at 1213, highlights the congressional purpose of remedying violations of Section 1981, *id.* at 1214, and does not implicate rights "traditionally relegated to state law," given the long-standing role of the federal system in protecting individuals from discriminatory treatment by private and public actors, *id.*  "Based on [these] factors," the Ninth Circuit concluded "that the amended 42 U.S.C. § 1981 contains an implied cause of action against state actors, thereby overturning *Jett*'s holding" to the contrary. *Id.*

The Court of Appeals for this Circuit has not yet weighed in on this issue.  However, district court decisions within this Circuit have adopted the majority rule and have concluded that Section 1981 does not create an independent cause of action against state actors.  *See Olatunji v. District of Columbia*, 958 F. Supp. 2d 27, 34 (D.D.C. 2013) ("This Court . . . holds that plaintiff cannot maintain an independent cause of action under § 1981 against the District of Columbia.");

*Owens v. District of Columbia*, 923 F. Supp. 2d 241, 255 (D.D.C. 2013) ("[T]he Court declines

to find that the Civil Rights Act of 1991 overturned the holding in *Jett* . . . .").

Plaintiff cites several cases for the proposition that other district court decisions from

within this Circuit have allowed claims under Section 1981 to proceed against the District of

Columbia.  Those cases, however, do not support Plaintiff's argument.  In *Dickerson v. District

of Columbia*, 806 F. Supp. 2d 116 (D.D.C. 2011), the district court granted plaintiff leave to

amend his complaint to include Section 1981 claims, and rejected arguments that the proposed

amendments were futile because plaintiff failed to allege specified elements of a claim under

Section 1981.  *See id.* at 121.  The court did not consider whether *Jett* remains good law or

whether such claims can proceed against state or municipal entities.  Plaintiff's attempt to rely on

*Smith v. Janey*, 664 F. Supp. 2d 1 (D.D.C. 2009), is perplexing: in that case, the district court

dismissed a complaint to the extent it attempted to allege a separate cause of action under Section

1981, and accepted the plaintiff's "clarifi[cation]" that the action was intended as an action

"brought under [Section] 1983 to enforce a violation of [Section] 1981."  *See id.* at 9; *see also

Sledge v. District of Columbia*, 869 F. Supp. 2d 140, 143 n.1 (D.D.C. 2012) (discussing

*Dickerson* and *Smith* and rejecting as "incorrect[]" the argument that district court decisions from

within this Circuit have held that Section 1981 claims may proceed against the District of

Columbia).  Similarly, although Plaintiff quotes language from *Peters v. District of Columbia,*

873 F. Supp. 2d 158, 208 (D.D.C. 2012), suggesting that a plaintiff may bring a "cause of action

under § 1981," the very next sentence of that opinion clarifies that a "[v]iolation of the rights

guaranteed by § 1981 by state entities can be remedied exclusively through the cause of action for damages created by § 1983."[1]

The Court concludes that the reasoning of the significant majority of courts that have refused to read into the amended Section 1981 an implied right of action against state or municipal entities is persuasive.  As those courts explain, private rights of action should not be inferred where Congress has already established an alternative remedial scheme.  *See, e.g.*, *McGovern*, 554 F.3d at 118.  Here, Section 1983 provides just such a scheme.  Moreover, as those courts emphasize, it is apparent from the legislative history of the 1991 amendments that the changes made to Section 1981 were intended to address two issues raised by the Supreme Court's consideration of *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989).  First, and most prominently, Congress sought to overturn *Patterson* to the extent that it held that private racial harassment relating to conditions of employment was not actionable under Section 1981.  Thus, the 1991 amendments made express that the right to "make and enforce" a contract includes the "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).  Second, Congress was aware that the *Patterson* decision expressed reservations about whether *Runyon v. McCrary* had been correctly decided, *see Patterson*, 491 U.S. at 171-72, as had the Supreme Court's earlier decision directing that the parties reargue the case and specifically address whether *Runyon v. McCrary* should be overruled, *see Patterson v. McLean Credit Union*, 485 U.S. 617, 617 (1988) (requesting briefing

---

[1]  Plaintiff's reliance on the unpublished transcript of an oral decision issued in *Burton v. District of Columbia*, No. 10-cv-1750 (D.D.C. 2010), which he attached to his Opposition to Plaintiff's motion to dismiss, *see* Dkt. 10-2, is also unpersuasive.  While that transcript reveals that the court discussed the question of whether Section 1981 creates a private cause of action at a status conference, the court declined to rule on the issue and informed the parties that they could raise and fully brief it in later filings.  *See* Dkt. 10-2 at 12.

and argument on whether the *Runyon* should be reconsidered).  To reaffirm *Runyon*'s conclusion that Section 1981 is not merely directed at governmental action, but also bars private discrimination in contracting, Congress added the second paragraph in the amendments declaring that "[t]he rights protected by [Section 1981] are protected against impairment by nongovernmental discrimination and impairment under color of State law."  42 U.S.C. § 1981(c).

The legislative history leaves little doubt about Congress' purpose.  The House Committee Report explains that Section 1981 was amended "to overturn *Patterson v. McLean Credit Union* and to codify *Runyon v. McCrary*." H.R. Rep. 102-40, at 35 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 729.  Tellingly, there is no hint in the legislative record that Congress also intended to overrule *Jett*.  *See Bolden*, 441 F.3d at 1137 ("[O]nly one who never relies on committee reports would fail to be impressed by the total absence in the committee reports of any mention of *Jett* . . . .").  It is unlikely, to say the least, that Congress enacted Section 1981(c) for the purpose of overruling *Jett*, but that it made no mention of the decision—or even the question that was resolved in that case.

Finally, the Court is not persuaded by the Ninth Circuit's decision in *Federation of African American Contractors*.  That decision emphasizes that the 1991 amendments to Section 1981 (1) signal a congressional intent to treat public and private actors the same for purposes of Section 1981 while (2) reaffirming the Supreme Court's holding in *Runyon* that Section 1981 includes a private cause of action against private actors.  *See Fed'n of African Am. Contractors*, 96 F.3d at 1213.  The decision thus concludes that Congress must have intended to provide victims of governmental discrimination the same private cause of action available to remedy private discrimination.  *Id.*  But nothing in that syllogism shows that Congress rejected the Supreme Court's conclusion that a right of action under Section 1983 provides an appropriate

remedy for violations of Section 1981 by municipal actors.  Moreover, the Ninth Circuit's

reliance on the standard articulated in *Cort v. Ash*, 422 U.S. 66 (1975), for finding an implied

cause of action under a federal statute has been overtaken by more recent decisions, including

*Alexander v. Sandoval*, 532 U.S. 275 (2001) where the Supreme Court has made clear that

congressional intent is the sole touchstone for purposes of implying causes of action not made

express by Congress.  *See Sledge*, 869 F. Supp. 2d at 144 (discussing the Supreme Court's shift

away from the multi-factor analysis in *Cort* and explaining that "[i]n the wake of *Sandoval*, the

D.C. Circuit has declined to imply causes of action in light of Congressional silence absent

compelling and unusual circumstances").  Congress must "display[ ] an intent to create not just a

private right but also a private remedy." *Sandoval*, 532 U.S. at 286; *see also, e.g.*, *Judicial*

*Watch, Inc. v. Nat'l Energy Pol. Dev. Grp.*, 219 F. Supp. 2d 20, 33 (D.D.C. 2002) ("[L]anguage

that creates a right is insufficient to create a right to sue.").  Given the absence of any mention of

*Jett* in the congressional record and the availability of a remedial scheme against state and

municipal actors under Section 1983, the Court agrees with the bulk of the authority on this

issue, and concludes that there is insufficient evidence that by enacting the Civil Rights Act of '

1991, Congress intended to create an independent cause of action against state and municipal

actors for violations of Section 1981.

### III.  CONCLUSION

For the reasons discussed above, the Defendant's Motion to Dismiss is **GRANTED** as to

Plaintiff's Section 1981 claims and **DENIED** as to Plaintiff's Section 1983 claims.

It is **SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  June 18, 2015